WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Serguei Silaev, | No. CV-14-02551-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Swiss-America Trading Corporation, | |
| Defendant. | |

    Pending before the Court is Defendant Swiss-America Trading Corporation's Motion for Summary Judgment, (Doc. 42), filed in response to Plaintiff Serguei Silaev's action alleging fraud—among other claims—stemming from several purchases of numismatic and commemorative in 2006.

    Concerned with the circumstances surrounding his purchases and a precipitous decline in their value, Plaintiff filed suit in Maricopa County on October 15, 2014. (Doc. 1). After removal to this Court, Defendant prevailed on an unopposed motion to dismiss three counts from the First Amended Complaint, (Doc. 23), leaving active claims of fraud, breach of contract, negligence/negligent misrepresentation, and breach of warranty.[1] (*Id.* at 2). Having considered the parties' filings, the Court now rules on Defendant's motion for summary judgment on all remaining claims.

---

[1] The Court dismissed Count I, a claim under Arizona's consumer fraud protection statute, Count IV, a conspiracy claim, and Count V, a claim for breach of fiduciary duty.

# I.

Plaintiff is a Russian citizen who has lived in the United States for twenty-five years and is a permanent resident. He worked "in the gold mining and exploration industry" for over two decades, and holds a degree in "economic geology," a field that entails "assessing the extent of gold present in a mine and the expense and profitability of extracting the gold." (Doc. 43 at 2). In early 2006, Plaintiff, interested in diversifying his investment portfolio, reached out to a number of "numismatic coin dealers" about the possibility of investing in gold. (*Id.*). Prior to contacting these dealers, Plaintiff had personal experience as an investor.

Defendant was among the coin dealers that Plaintiff reached out to in 2006, after Plaintiff learned of the company through an advertisement that was aired during a radio talk show. In response to Plaintiff's inquiry, Defendant mailed "investment literature" to Plaintiff which addressed the "benefits and risks of investing in numismatic and precious metal coins." (Doc. 43 at 2). Having consumed this literature, Plaintiff then spoke with Richard Spohr, a representative of Defendant, by telephone in April 2006.[2] Persuaded by Mr. Spohr's sales pitch that collectible coins were a better investment than gold bullion, Plaintiff made an initial purchase of $25,810.00 worth of coins on April 11, 2006. (*Id.* at 3).

The very next day, Plaintiff made a second purchase from Defendant, acquiring fifty-three coins for a total of $34,895.76. (Doc. 43 at 4). Plaintiff thereafter made a third purchase on August 15, 2006, for $38,100.00, and a fourth purchase on August 21, 2006, for $1,050.00. (*Id.*). On October 23, 2006, Plaintiff sold forty-nine coins back to Defendant for a total of $57,825.00, which was then applied as a credit towards Plaintiff's fifth purchase of coins for $56,800.00.[3] (*Id.* at 5). This was the final purchase

---

[2] Although Plaintiff's first point of contact with Defendant was Richard Spohr, Plaintiff made some of his 2006 purchases through representative Danny DeVito. Plaintiff made his August 24, 2009, purchase through Michael Gaynor.

[3] Plaintiff was refunded the difference by check. (Doc. 43 at 5).

made from Defendant in 2006.[4]

Following Plaintiff's investment in Defendant's coins, he monitored their performance and watched their values decrease significantly. By February of 2007, Plaintiff arrived at the conclusion that it was a mistake to invest in the coins, and he unsuccessfully attempted to dissuade a family member from making a similar purchase. (Doc. 43 at 12). Plaintiff, however, retained the coins he purchased until 2009, when he contacted Defendant in an effort to sell the coins back. (*Id.*). The price Defendant offered, however, was unacceptable and Plaintiff declined. Despite the poor performance of his investments in numismatic and commemorative coins, Plaintiff was not deterred from making a final investment. On August 24, 2009, after speaking Michael Gaynor, Plaintiff made his sixth and final purchase from Defendant, acquiring twenty coins for $38,500.00. (Doc. 43 at 5).

At some point in 2012, Plaintiff, concerned with the performance of his investments and the circumstances surrounding his purchases retained legal representation. On July 30, 2012, Plaintiff furnished a demand letter on Defendant seeking more than $160,000 in damages, and advancing a number of possible legal claims. (Doc. 43-25 at 1-7). Plaintiff's efforts were unsuccessful, however, and he filed suit in Maricopa County Superior Court on October 15, 2014. (Doc. 1 at 2). On November 18, 2014, Defendant removed the case to this Court.

Having set forth the pertinent factual and procedural background, the Court now turns to Defendant's pending motion.

**II.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[4] In a separate transaction, Plaintiff purchased $33,500 in numismatic coins from a competitor of Defendant's on July 12, 2006. (Doc 43. at 4-5).

law." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557 (9th Cir. 2004) (citation omitted); *see also* Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating to the Court the basis for and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish the existence of a material fact in dispute. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).

A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. But in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Finally, when deciding a motion for summary judgment, "[t]he court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). The Court is under no obligation to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); Fed. R. Civ. P. 56(c)(3) (noting a court "need[s]" to consider the cited material but "may consider other materials in the record"). And the party opposing that motion must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002) ("The efficient management of judicial business mandates that parties submit evidence responsibly."). Thus, the party opposing summary judgment cannot simply make broad generalizations supported by pointing to the record as a whole to successfully oppose summary judgment. *See Keenan*,

91 F.3d at 1279 (criticizing counsel for providing "multiple citations [to the record] in lieu of simply stating the material facts disputed").

### III.

**A.  Plaintiff's Failure to Adhere to Local Rule 56.1(b)**

At the outset, the Court must address the insufficiency of Plaintiff's summary judgment filings. Defendant filed a motion for summary judgment in addition to a separate statement of supporting facts, as Local Rule 56.1(a) requires. Plaintiff thereafter filed his opposition on May 25, 2016, but failed to file a separate, contravening statement of facts as mandated by Local Rule 56.1(b).[5] The failure to submit a controverting statement of facts, by itself, can be "fatal" to opposing summary judgment. *See Malcolmson v. Topps Co.*, No. CV-02-2306-PHX-GMS, 2010 U.S. Dist. LEXIS 7680, at *10 (D. Ariz. Jan. 28, 2010) (noting that the plaintiff "effectively admitted" the defendant's "version of the facts . . . because he failed to file a controverting statement of facts in compliance with . . . Local Rule 56.1(b)"); *see also Buchanan v. Deutsche Bank Trust Co.*, No. CV-12-637-PHX-SMM, 2013 U.S. Dist. LEXIS 140843, at *2 (D. Ariz. Sept. 30, 2012).

Moving beyond Plaintiff's failure to adhere to procedural rules, his opposition to Defendant's motion—instead of producing evidence in support of his position coupled

---

[5] Counsel for Plaintiff has failed to abide by Local Rule 56.1(b) twice, in related actions, within a span of thirteene days. The Court finds it appropriate to reproduce the text of the rule in full for educational purposes: "Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support." L.R.Civ. 56.1(b)

with citation to applicable law—is comprised of stock legal standard and conclusory, uncorroborated assertions that summary judgment is not warranted. For example, in opposing summary judgment on his fraud claim, Plaintiff simply asserts that "[b]ased on the sworn affidavit testimony of Plaintiff . . . set forth above, the representation of facts, including their falsity and materiality, are prevalent within this proper summary judgment evidence." (Doc. 46 at 7). And in opposition to summary judgment on his "contractual claims [and] warrant[y] claims," Plaintiff merely argues that "[i]t is clear from the attached, timely summary judgment evidence, that Plaintiff . . . entered into a contractual relationship, and one in which [Defendant] had warranted the characteristics of the product sold to Plaintiff at a huge profit" and that "[a]t days end, Defendant breached the contract by selling a product that was not at all what [Defendant] warrantied it to be." (*Id.* at 8-9). These vague references to the record and conclusory assertions, which are unsupported by reasonably identifiable evidence, are impermissible means to oppose summary judgment. *Anderson*, 477 U.S. at 247-48; *Keenan*, 91 F.3d at 1279.

In light of Plaintiff's failure to comply with the Local Rules, his uncorroborated and conclusory opposition, and the lack of a cognizable record in support, it is evident that Plaintiff has failed to meaningfully respond to Defendant's statement of facts. The only evidence offered in opposition is a four page affidavit authored by Plaintiff. Excusing the violation of Local Rules, and considering the portions of the affidavit that do not conflict with Plaintiff's deposition testimony,[6] it too fails to challenge Defendant's factual assertions. For example, nothing in Plaintiff's affidavit addresses Defendant's characterization of the alleged false statements at issue, the applicable statutes of limitation, when Plaintiff became aware of the injuries he had suffered, his damages, the lack of an expert or expert report, and his breach of contract and breach of warranty claims, a significant portion of Defendant's statement of facts. Thus, even considering

---

[6] *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2013) (noting that the "sham affidavit rule" holds "that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

Plaintiff's affidavit, it fails to consequentially challenge Defendant's version of events, and the result is that the Court is left with only Defendant's view of the facts. *See* Fed. R. Civ. P. 56(e)(2) (If the non-movant does not properly address a statement of fact, the Court may consider that fact undisputed for purposes of the motion). Accordingly, the Court will deem Defendant's statement of facts undisputed unless the record proves otherwise and will grant summary judgment in favor of Defendant "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Finally, the Court is compelled to address the fact that the instant action is not the only instance in which counsel for Plaintiff failed to adhere to the Local Rules governing summary judgment. On May 13, 2016, Judge Silver issued an order granting Defendant summary judgment on all claims in *Philip Mann, et al. v. Swiss-America Trading Corporation*, No. CV-14-002552-PHX-ROS, a case in which counsel also represented the plaintiffs. In her order, Judge Silver observed that the plaintiffs' summary judgment filings were lacking, as the Plaintiffs failed to file a contravening statement of facts in accordance with Local Rule 56.1(b). Judge Silver noted that this failure "alone" was "fatal" to the plaintiffs' claims. Counsel, in the instant action, filed an opposition to Defendant's motion for summary judgment on May 25, 2016, a full *twelve days* after Judge Silver had informed counsel that the failure to adhere to L.R.Civ. 56.1(b) was *fatal* to his client's claims. Inexplicably, armed with this knowledge—and having obtained a week's extension from this Court to file the response—(Doc. 45), counsel *again* failed to abide by L.R.Civ. 56.1(b) and filed no contravening statement of facts. Faced with these indisputable facts, the Court cannot help but conclude that counsel's inability—or refusal—to comply with the Rules of Practice for this District has contributed substantially to unfavorable judgments being entered against his clients in at least two actions.

1 **B.  Applicable Statues of Limitation**

Turning to the merits of Defendant's motion, the first substantive issue to be addressed is whether Plaintiff's claims are time-barred under Arizona law, as Defendant contends. (Doc. 42 at 9-10). Plaintiff's contract and warranty claims are premised on the breach of oral agreements executed over the telephone, which are subject to a three-year statute of limitations. A.R.S. § 12-543(1). Plaintiff's common law fraud claim must also be brought within a three-year window, A.R.S. § 12-543(3), and the claim of negligence/negligent misrepresentation is subject to a two-year statute of limitations. *See Sierra-Sonora Enters. v. Domino's Pizza, LLC*, No. CV10-0105-PHX-JAT, 2010 U.S. Dist. LEXIS 43503, at *12 (D. Ariz. May 4, 2010) (citing AR.S. §§ 12-542, 44-1991) (noting that "[t]he statute of limitations period in Arizona is two years for the torts of negligent misrepresentation and breach of the good faith and fair dealing . . . "). Plaintiff does not dispute the applicability of the relevant limitation periods.

In total, five purchases form the basis of this action. In 2006, Plaintiff purchased numismatic and commemorative coins from Defendant on the following dates: April 11, April 12, August 15, August 21, and October 23. (Doc. 43 at 3-4). Plaintiff did make an additional purchase from Defendant on August 24, 2009, for $38,500.00 (*Id.* at 5). But at his deposition, Plaintiff stated that Defendant "didn't convince" him to make the purchase, and that he "did it [him]self," in an attempt to "[k]ind of protect whatever." (Doc. 43-1 at 123-24). Plaintiff elaborated that "it really wasn't what [Defendant] said or didn't say in 2009," that led to the sale. (*Id.*). At a separate juncture of his deposition, Plaintiff also acknowledged that Michael Gaynor—the representative whom he made the August 2009 purchase through—did not make any false statements to him, and that the alleged false statements were made by different sales personnel. (*Id.* at 183). Defendant's pending motion expressly asserted that the August 24, 2009, transaction did not support Plaintiff's claims. (Doc. 42 at 3 n.5). Plaintiff's response declined to challenge this

assertion,[7] and Plaintiff failed to present any evidence to support the theory that his August of 2009 purchase gave rise to the claims. In light of this, the Court finds that Plaintiff concedes the point, and agrees that only the five 2006 purchases support his claims.[8]

As noted *supra*, Plaintiff filed suit in Maricopa County Superior Court on October 15, 2014. (Doc. 1 at 2). Defendant argues that by 2007, under Arizona's "discovery rule," Plaintiff had sufficient knowledge of his economic injuries to trigger the running of the respective statutes of limitation. (Doc. 42 at 9-10). Thus, according to Defendant, Plaintiff's remaining claims became time-barred in 2009 and 2010, respectively, at least four years prior to filing suit.

The First Amended Complaint pleads that Plaintiff "became aware as to the nature of Defendant's conduct" "within [twelve] to [twenty four] months of filing the original lawsuit." (Doc. 13 at 5-6). But the pleading is supported by no evidence, and the Court need not accept it as true under Rule 56. Plaintiff's formal opposition to Defendant's pending motion fails to meaningfully engage the assertion that Plaintiff's claims are time-barred. Plaintiff merely argues that while his relationship with Defendant began in 2006, it "does not defeat Plaintiff's claim." (Doc. 46 at 9). Rather, Plaintiff argues that the record "makes clear, in fact, that he did not know the full nature of the misrepresentation made to him until years later," and that "[s]uch circumstances, which were not of

---

[7] Plaintiff's affidavit states that in August of 2009, Defendant "misrepresented to him" that "his investment would go on to increase in value dramatically, just as I was promised." (Doc. 46-1 at 4). This is directly contradicted by Plaintiff's deposition testimony, set forth *supra*, and will not be considered by the Court. *See Yeager*, 693 F.3d at 1080.

[8] Plaintiff also completed two transactions in which he sold coins to Defendant, including an October 23, 2006, sale of forty-nine coins to Defendant for a total of $57,825.00. (Doc. 43 at 4). This amount was then applied as credit towards Plaintiff's fifth purchase of coins. (*Id.* at 4-5). Having reviewed Plaintiff's First Amended Complaint, his opposition to summary judgment, and his attached affidavit, nothing indicates that Plaintiff believes these two sales gave rise to the claims in this action.

Plaintiff's doing, operate to toll the statute of limitations."[9] (*Id.*). Plaintiff offers no evidence to support this.

Plaintiff further asserts that Defendant's argument is "a disingenuous proposition, in an attempt to unduly use Arizona law to save Defendant from its wrongdoing." (*Id.*). Again, Plaintiff fails to explain—even in a cursory manner—how his argument has merit or how Defendant is attempting to "unduly use Arizona law," which is of note, as Plaintiff filed suit eight years after the at-issue purchases took place. Ignoring Plaintiff's failure to abide by the Local Rules and considering the attached affidavit, its last sentence attests that it was not "until a number of years later" that Plaintiff "realized just how much [he] had been taken advantage of." (Doc. 46-1 at 4). Plaintiff thus relies on this solitary sentence to create a genuine dispute as to when Plaintiff became aware of his economic injuries.

Generally, "a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Tavilla v. Cephalon*, *Inc.*, 870 F. Supp. 2d 759, 763 (D. Ariz. 2012) (quoting *Gust*, *Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964 (Ariz. 1995)). Under the "discovery rule," adopted by Arizona courts, "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Id.* (citation omitted). The Arizona Supreme Court has held that under this rule, the statute of limitations will not run "until the plaintiff has discovered the facts constituting the cause of action," *Gus, Rosenfeld & Henderson*, 989 P.2d at 967 (citation omitted), or, stated differently, where the plaintiff "possess[es] a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998) (citation omitted); *see also Lawhon v. L.B.J. Institutional Supply*, *Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988) (noting that the plaintiff must know the basic "what" and "who" elements

---

[9] The Court assumes that Plaintiff is referring to the record produced by Defendant. Plaintiff constructed no record in support of his opposition, save for a short affidavit detailing his recollection of the purchases he made from Defendant.

- 10 -

of the injury).

The Court begins with Plaintiff's claim of negligence/negligent misrepresentation, which is subject to a two-year statute of limitations. Evidence shows that on July 30, 2012, Plaintiff—through the firm counsel of record belongs to—furnished a demand letter on Defendant, seeking $97,125.00 in actual damages and $30,000.00 in attorney's fees. (Doc. 43-25 at 1). This letter explicitly noted a potential claim of "negligent misrepresentation and negligence." (*Id.* at 4). Thus, even assuming that Plaintiff became aware of his ability to sue Defendant the *very same day* that the demand letter was drafted and sent, a very unlikely scenario, the requisite limitation period would have run on July 30, 2014, seventy-seven days before Plaintiff filed suit. Plaintiff's negligence/negligent misrepresentation claim is clearly time-barred.

Turning to Plaintiff's breach of contract/warranty and fraud claims, each of which carries three year statute of limitations, Defendant has proffered evidence establishing that Plaintiff was aware of the falling value of his purchases as early as 2006. Evidence also shows that Plaintiff purchased forty-nine coins on April 11, 2006, for a total of $82,890.00, and sold the same coins on October 23, 2006, for $57,963.00, experiencing a loss of $24,927.00, or roughly 30%. (Doc. 43-23 at 1). Plaintiff consistently monitored the value of his investments through 2007, and was aware that his investment dropped "[a] lot," and that it "dropped a lot right away" after his purchase. By February of 2007, Plaintiff "already felt it was a big mistake" to invest in "commemorative[]" coins, and urged his son not to make a similar investment. (*Id.* at 129-130). Moreover, Plaintiff complained to Defendant prior to his August 2009 purchase and tried to sell the coins back to Defendant, but found that the price it would accept was too low. (Doc. 43-1 at 123-124). Plaintiff's concerns, however, did not dissuade him from making a $38,50.000 purchase on August 24, 2009. (Doc. 43 at 5).

The aforementioned facts paint a clear picture of an investor acutely aware of the poor performance of his investments. And Plaintiff does not dispute any of these facts. But it is difficult for the Court, based on the available evidence, to find as an indisputable

fact that as of 2007, Plaintiff possessed the "requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Doe*, 955 P.2d at 961 (citation omitted). The Court is skeptical that Plaintiff managed to remain wholly unaware of the Defendant's allegedly fraudulent conduct for *six years*, an exceedingly long time, until contacting legal representation in 2012. And the Court notes that Plaintiff makes absolutely no effort to illuminate for the Court *when* and *how* he became aware of Defendant's behavior and *why* his claims are not time barred. Skepticism and poor briefing aside, the Court—taking all facts in the light most favorable to Plaintiff—cannot say that Plaintiff's remaining claims are time-barred. Plaintiff's failure to contest Defendant's version of the facts does not alter this calculus.

Thus, while Plaintiff's negligence/negligent misrepresentation claim is plainly time-barred, an analysis of the merits of Plaintiff's breach of contract/warranty and fraud claims is required. In the interest of completeness, the Court has also analyzed the merits of Plaintiff's time-barred negligence/negligent misrepresentation claim.

**C.     Breach of Contract**

To prevent summary judgment on his breach of contract claim, Plaintiff must point to evidence establishing "the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). The parties do not dispute that a valid oral contract existed for each transaction carried out between the parties. But Plaintiff has failed to specify how any of these contracts were breached or to identify the damages that resulted from the breach. Plaintiff's opposition simply alleges that "Defendant breached the contract by selling Plaintiff a product that was not at all what [Defendant] warrantied it to be." (Doc. 46 at 9). Such a conclusory statement without any evidentiary support is insufficient to oppose summary judgment.

Moreover, even expanding the analysis to include Plaintiff's affidavit and deposition testimony, Plaintiff failed to identify at any point which contracts were breached, what constituted breach, and what the resulting damages were. Based on the

facts and evidence available to the Court, Plaintiff appears to have received exactly what he contracted to purchase. Absent any effort to clearly identify the necessary elements of breach and damages, Plaintiff's claim does not marshal enough factual support to survive summary judgment.

**D. Fraud**

A viable claim for fraud under Arizona law "requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury." *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010). Plaintiff has failed to point to evidence in the record to establish each of these necessary elements, including the most basic element of a claim of fraud: a materially false representation.

Having thoroughly reviewed Plaintiff's opposition filings, the Court cannot discern what allegedly false statements Plaintiff believes support his fraud claim. The entirety of Plaintiff's opposition consists of the statement that "[b]ased on the sworn affidavit testimony of Plaintiff . . . set forth above, the representations of facts, including their falsity and materiality, are prevalent within this proper summary judgment evidence" and that "[i]t is clear that ultimately, Defendant's own representatives knew of the falsity within the information they used to influence Plaintiff." (Doc. 46 at 7). Missing from Plaintiff's argument is supporting evidence and even a cursory attempt to cite to what statements Plaintiff alleges to have been false with reasonable specificity. Absent some explanation from Plaintiff as to how the discussions surrounding these transactions support a claim of fraud, the Court is incapable of determining what it should be examining to see whether sufficient evidence exists in the record necessitating trial to resolve the claim.

Expanding the analysis to encompass Plaintiff's affidavit, he asserts that based on Richard Spohr's statements that gold bullion "was a bad investment," and his "very compelling argument" about the potential confiscation of gold coins by the United States government, Plaintiff "couldn't wait [to] invest," "[h]aving been convinced by Mr. Spohr's compelling logic." (Doc. 46-1 at 2). Assuming that Plaintiff's theory of fraud rests on these general statements, Plaintiff's claim fails as a matter of law. Statements concerning future events and offered opinion cannot support a claim of fraud.[10] *Arnold & Assoc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (fraud cannot be based on "statements concerning future events"); *Page Investment Co. v. Staley*, 468 P.2d 589, 591 (Ariz. 1970) (opinions are "not actionable as fraud").

Beyond this portion of Plaintiff's affidavit, and reading Plaintiff's opposition filings in as positive a light as possible, the Court can discern no factual basis to support a claim of fraud. And even if some statement in the record Defendant provided could possibly support a claim of fraud, the Court is under no obligation to "scour the record in search of a genuine issue of triable fact" where counsel failed to produce evidence to oppose summary judgment. *Keenan*, 91 F.3d at 1279. Defendant is therefore entitled to summary judgment on Plaintiff's claim of fraud.

---

[10] Plaintiff's affidavit also references discussions he had with Mr. Danny DeVito, a representative of Defendant. (Doc. 46-1 at 3). The only statements the Court gleans from this portion of the affidavit that could serve as the basis for a fraud claim are Mr. DeVito convincing Plaintiff that it "was much more profitable to invest in commemorative coins instead of numismatic coins," that these coins could be sold "in just a few short years . . . for a sum well over ten times the value [he] had acquired them for," and that the coins could eventually be sold "for a huge sum that would secure [his] financial future." (*Id.*). Even assuming that these statements are not mere opinions or do not pertain to future events, which cannot support his claim, Plaintiff offers no evidence to create a genuine issue of material fact with respect to the other elements of a fraud claim. Consideration of Mr. DeVito's conversations with Plaintiff does not save this claim from summary judgment.

### E. Negligent Misrepresentation and Negligence

Under Arizona law, claims for negligent misrepresentation and negligence are closely related. "A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence. Thus, there must be a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty." *KB Home Tucson*, *Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 411 (Ariz. Ct. App. 2014).

Plaintiff has failed to identify the factual basis for his negligence claims. The entirety of Plaintiff's argument is that Plaintiff "clearly relied upon [Defendant] for their expertise," and that "information provided by [Defendant] was inaccurate" with respect to "future projections" and "past events," including statements pertaining to their product's "market history" and "previous history of profitability." (Doc. 46 at 8). Plaintiff points to no evidence of record to support this assertion. Even considering Plaintiff's affidavit in lieu of a contravening statement of facts, it contains no sworn statements speaking to anything involving Defendant's market history or previous history of profitability.[11]

Citing to no evidence to support his claim and offering no persuasive argument, Plaintiff has failed to identify what duty Defendant owed Plaintiff, or how it was breached, and the Court cannot create a claim out of whole cloth to survive summary judgment. Even if this claim were not time-barred, Defendant would be entitled to prevail as a matter of law.

### F. Breach of Warranty

Plaintiff's final claim is one for breach of warranty, alleging that "Defendant . . . breached an express warranty by representing to Plaintiff[] that []he would receive particular types of rare and valuable coins." (Doc. 13 at 11). Plaintiff, however, has again

---

[11] To the extent that Plaintiff's claims are based on statements made by Defendant regarding any future events, they fail as a matter of law. *Arnold & Associates*, 275 F. Supp. 2d at 1029 ("A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation.").

failed to support his claim with evidence. Plaintiff's affidavit makes no mention of any warranty. Plaintiff does not point to any evidence of record to indicate that an express warranty existed. And during Plaintiff's deposition, he failed to identify whether any warranty existed and how it was breached. (Doc. 43-1 at 157-58). Plaintiff attempts to excuse the deposition testimony by asserting that it "only shows that he is not familiar with legalese or intricate causes of action." (Doc. 46 at 9). But Plaintiff fails to account for the dearth of evidence in support of his claim that Defendant breached any warranty, leaving his opposition to stand on a bare assertion that summary judgment is inappropriate, which is insufficient. *Anderson*, 477 U.S. at 248.

The result is that Plaintiff has failed to carry his burden to identify, with any particularity, evidence establishing that a genuine issue of material fact exists necessitating trial to resolve. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, *Keenan*, 91 F.3d at 1279. Defendant is therefore entitled to judgment on Plaintiff's breach of warranty claim.

Having reviewed the evidence of record and the parties' respective filings, it is clear that Plaintiff's negligence/negligent misrepresentation claim is time-barred, and that the evidence of record does not create a genuine issue of material fact with respect to any of the First Amended Complaint's remaining claims. Defendant's "motion and supporting materials—including the facts considered undisputed—show that [it] is entitled" to judgment as a matter of law on all remaining claims. Fed. R. Civ. P. 56(e)(2),(3). In light of these findings, judgment will be entered in Defendant's favor and the action will be dismissed.

### G. Defendant's Request for Sanctions

Having prevailed on its summary judgment motion, Defendant advances the argument that an award of fees in the form of sanctions[12] "seem[s] appropriate because

---

[12] Defendant asserts that fees can be assessed under Fed. R. Civ. P. 11, Title 28 U.S.C. § 1927 (2012), or A.R.S. § 12-349 (2016). The Court makes no determination as

this case is and has been frivolous." (Doc. 47 at 10). Defendant requests, in the event that the Court is not "convinced that the case is frivolous from the pleadings of record," that it "defer ruling on th[e] issue," and grant Defendant the opportunity to "submit other evidence showing why sanctions are warranted." (*Id.*). In light of Plaintiff's counsel's failure to contest Defendant's partial motion to dismiss, the failure to adhere to the Local Rules governing summary judgment, and the conclusory, uncorroborated opposition to Defendant's motion for summary judgment, the Court has substantial misgivings as to the viability of this suit, as well as the representation of Plaintiff throughout.

At this time, the Court makes no findings with respect to whether attorney's fees are warranted, or on what grounds. Defendant will be given fourteen days from the entry of judgment to file a motion for fees, and may assert whichever theory of recovery it believes justifies such an award.

## IV.

Based on the foregoing,

/
/
/
/
/
/
/
/
/
/
/
/

to which, if any, statutory authority is appropriate in the instant action.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 42), is **GRANTED**, and the Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS FURTHER ORDERED** that counsel for Plaintiff must furnish his client, Mr. Silaev, with a copy of this Order. Counsel shall, within fourteen days of judgment, file an affidavit with the Court attesting to compliance.

**IT IS FURTHER ORDERED** that Defendant has fourteen days from entry of judgment to file a motion to recover fees and costs. Defendant's motion, regardless of the theory of recovery it advances, shall comply with the requirements set forth in the Court's April 22, 2015, Scheduling Order. (Doc. 32 at 6-7).

Dated this 8th day of September, 2016.

James A. Teilborg
Senior United States District Judge